UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Barbara Garn,     Civil No. 14-4196 (PAM/SER)

Plaintiff,

v.     **MEMORANDUM AND ORDER**

City of Brooklyn Park; City of Crystal;
City of Minneapolis; City of North St. Paul;
City of St. Paul; City of Woodbury; Kandiyohi
County; Michael Campion, in his individual
capacity as Commissioner of the Department
of Public Safety; Ramona Dohman, in her
individual capacity as Commissioner of the
Department of Public Safety; John and Jane
Does (1-100) acting in their individual capacity
as supervisors, officers, deputies, staff,
investigators, employees, or agents of the
other governmental agencies; Department of
Public Safety Does (1-30) acting in their
individual capacity as officers, supervisors,
staff, employees, independent contractors,
or agents of the Minnesota Department of
Public Safety; and Entity Does (1-50)
including cities, counties, municipalities,
and other entities sited in Minnesota,

Defendants.

---

This matter is before the Court on Defendants' Motions to Dismiss and/or to Sever. For the reasons that follow, the Motions to Dismiss are granted, the Motions to Sever are denied as moot, and the Complaint is dismissed with prejudice as to all Defendants except the City of St. Paul, and dismissed without prejudice as to St. Paul.

**BACKGROUND**

Plaintiff Barbara Garn alleges that Defendants[1] illegally accessed her driver's license information nearly 60 times between 2004 and 2011 without a legitimate law-enforcement purpose. (Compl. ¶ 2.) Garn formerly edited two publications aimed at the law enforcement community, <u>Minnesota Trooper</u> and <u>Minnesota Fraternal Order of Police</u>. (<u>Id.</u> ¶¶ 30-31.) In addition, Garn operates an adult hockey league that a number of law enforcement personnel play in. (<u>Id.</u> ¶¶ 34-35.) Garn alleges that a law-enforcement employee from Brooklyn Park and another from Crystal showed romantic interest in her (<u>id.</u> ¶ 36), and that a law-enforcement officer from St. Paul was kicked out of her hockey league in the Spring of 2011. (<u>Id.</u> ¶ 37.) Garn further alleges that the hockey-playing Brooklyn Park police officer's romantic interest occurred in late 2009, which coincides with some of Brooklyn Park's look-ups. (<u>Id.</u> ¶ 62.) Similarly, the romantic interest shown by the Crystal police officer occurred during the 2008-2009 hockey season, which also corresponds to some of the Crystal look-ups. (<u>Id.</u> ¶ 67.)

---

[1] Defendants are the City of Brooklyn Park, City of Crystal, City of Minneapolis, City of North St. Paul, City of St. Paul, and City of Woodbury (collectively, City Defendants); Kandiyohi County; Michael Campion, in his individual capacity as Commissioner of the Department of Public Safety, and Ramona Dohman, in her individual capacity as Commissioner of the Department of Public Safety (collectively, Commissioner Defendants); John and Jane Does 1-100, acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees, or agents of the other governmental agencies; unknown Department of Public Safety Does 1-30 acting in their individual capacity as officers, supervisors, staff, employees, independent contractors, or agents of the Minnesota Department of Public Safety; and unknown Entity Does 1-50, including cities, counties, municipalities, and other entities sited in Minnesota (collectively, Unknown Defendants).

The Driver and Vehicle Services Division of the Minnesota Department of Public Safety (DPS) maintains a database of Minnesota drivers' motor vehicle records, which includes each licensed driver's name, date of birth, driver's license number, address, photograph, weight, height, eye color, social security number, and certain health and disability information. (Id. ¶¶ 39-40.) The database includes current and past data for each licensed driver. (Id. ¶ 40.) All of this information was available each time someone accessed Garn's records.

DPS provided an audit to Garn showing each date and time her driver's license data was accessed by an Unknown Defendant. (Id. ¶ 45, Ex. A.) Garn requested only those look-ups that were accomplished by using her name, rather than her license plate number. (Id. ¶ 177.) The DPS audit shows that Garn's data was accessed 54 total times between 2004 and 2011. (Id. Ex. A.) All City Defendants named in the Complaint accessed Garn's data, as did Kandiyohi County. In addition, Garn's data was accessed by the Minnesota DNR and by the South St. Paul driver's license office, but these entities are not named in this suit. (Id.) Thus, Garn challenges a total of 52 instances of allegedly improper access to her driver's license data over an eight-year period.

Garn asserts that each acquisition of her data must have been unauthorized and improper because she has never been "charged with or suspected of committing a crime in [any of the City or County Defendants' jurisdictions], has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving [any City Defendant or Kadiyohi County], and there was no legitimate reason for [her] to have been the subject of

3

any investigation by [any City Defendant or Kandiyohi County]." (Id. ¶¶ 54, 60, 65, 70, 74, 78, 82.) Her only explanation for Defendants' alleged actions is "because Plaintiff is a woman, because Plaintiff is well-known in the law-enforcement community, because of Plaintiff's physical attractiveness, or because Plaintiff is interesting to law-enforcement officers or for other personal reasons." (Id. ¶ 183.)

On October 9, 2014, Garn filed suit alleging a single claim under the Driver's Privacy Protection Act (DPPA). Garn seeks damages "in excess of $75,000," punitive damages, costs, attorney's fees, and injunctive relief. All Defendants have filed Motions to Dismiss and all Defendants save the Commissioner Defendants have filed Motions to Sever.

This Court previously dismissed one of the more than 30 similar DPPA cases filed in this District. Ray v. Anoka Cnty., 24 F. Supp. 3d 843 (D. Minn. 2014). The Court's colleagues have similarly dismissed, either in whole or in part, most of the remaining DPPA cases. See, e.g., Kolls v. Edina, No. 14-cv-370, 2014 WL 5810332 (D. Minn. Nov. 7, 2014) (Frank, J.); Delaney v. Beltrami Cnty., No. 14-cv-358, 2014 WL 5406884 (D. Minn. Oct. 21, 2014) (Schiltz, J.); Gavin v. Anoka Cnty., No. 14-cv-615, 2014 WL 4722496 (D. Minn. Sept. 22, 2014) (Montgomery, J.); Sherno v. Anoka Cnty., No. 14-cv-982, 2014 WL 4670926 (D. Minn. Sept. 19, 2014) (Ericksen, J.); Roschen v. Wabasha Cnty., 29 F. Supp. 3d 1244 (D. Minn. 2014) (Montgomery, J.); Kost v. Hunt (Kost II), No. 13-cv-583, 2014 WL 2002989 (D. Minn. May 15, 2014) (Ericksen, J.) (affirming Report and Recommendation dated December 19, 2013) (Leung, M.J.); Gulsvig v. Mille Lacs Cnty., No. 13-cv-1309, 2014 WL 1285785 (D. Minn. Mar. 31, 2014) (Tunheim, J.); Sheila Potocnik v. Carlson, No. 13-cv-

2093, 2014 WL 1206403 (D. Minn. Mar. 24, 2014) (Schiltz, J.); Mitchell v. Aitkin Cnty., No. 13-cv-2167, 2014 WL 835129 (D. Minn. Mar. 4, 2014) (Ericksen, J.); McDonough v. Al's Auto Sales, Inc., No. 13-cv-1889, 2014 WL 683998 (D. Minn. Feb. 21, 2014) (Doty, J.); Brian Potocnik v. Anoka Cnty., No. 13-cv-1103, 2014 WL 683980 (D. Minn. Feb. 21, 2014) (Doty, J.); Bass v. Anoka Cnty., 998 F. Supp. 2d 813 (D. Minn. 2014) (Doty, J.); Rasmussen v. Chisago Cnty., 991 F. Supp. 2d 1065 (D. Minn. 2014) (Nelson, J.); Nelson v. Jesson, No. 13-cv-340, 2013 WL 5888235 (D. Minn. Nov. 1, 2013) (Kyle, J.); Kiminski v. Hunt, No. 13-cv-185, 2013 WL 6872452 (D. Minn. Sept. 20, 2013) (Ericksen, J.).

On March 11, 2015, the Eighth Circuit Court of Appeals heard oral argument on the consolidated appeal of four of the dismissed cases. See Mitchell v. Aitkin Cnty., No. 14-1765 (8th Cir. filed Mar. 28, 2014); McDonough v. Al's Auto Sales, No. 14-1754 (8th Cir. filed Mar. 28, 2014), Bass v. Anoka Cnty., No. 14-1756 (8th Cir. filed Mar. 28, 2014); Brian Potocnik v. Anoka Cnty., No. 14-1974 (8th Cir. filed Apr. 23, 2014). There is, of course, no timetable for the Court of Appeals's ruling on those matters.

Having previously addressed a substantially similar case, the Court will not repeat its legal analysis, except where necessary to elucidate the issues presented here.

**DISCUSSION**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Garn. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

**A.     DPPA Claim**

The DPPA prohibits "any person" from "knowingly . . . obtain[ing] or disclos[ing] personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722. Garn alleges that all Defendants violated the DPPA by obtaining her motor vehicle records, and thus her personal information, without a permitted purpose. She alleges that Defendants violated the DPPA between 2004 and 2011.

**1.     Statute of Limitations**

Most of Garn's DPPA claims are time-barred.[2] As this Court previously decided, "'a four-year limitations period applies to DPPA claims and . . . the so-called "discovery rule" exception does not apply.'" Ray, 24 F. Supp. 3d at 847 (quoting Mitchell, 2014 WL 835129,

---

[2] In addition to the arguments discussed below, Defendants also contend that Garn's claims are barred by the doctrine of qualified immunity. For the reasons stated in Mallak v. Aitkin County, 9 F. Supp. 3d 1046, 1063-64 (D. Minn. 2014) (Frank, J.), the Court disagrees.

at *4). A DPPA claim accrues at the time the wrong occurs, i.e., at the time of the allegedly improper access to Garn's records. Id. Therefore, all claims relating to alleged DPPA violations before October 9, 2010, four years before Garn filed the Complaint, are time-barred. Because there are no timely claims brought against Brooklyn Park, Crystal, Minneapolis, North St. Paul, or Kandiyohi County, those entities are dismissed with prejudice.

Based on Exhibit A to the Complaint, the only remaining alleged instances of improper retrieval of Garn's data are as follows:

| Defendant | Alleged Violations Not Time-barred |
|---|---|
| Woodbury | 10/17/10 (1:32 p.m. (twice)); 2/20/11 (5:57 p.m.) |
| St. Paul | 3/21/11 (7:37 a.m. (twice)); 4/3/11 (2:34 p.m.) |

(See Docket No. 1-1 at 2.)

### 2. Claims against the Commissioner Defendants

As in Ray, Garn has not alleged that the Commissioners personally acted "with impermissible purpose." Ray, 24 F. Supp. 3d at 848. Thus, for the reasons discussed in Ray, her claims against the Commissioner Defendants fail and are dismissed with prejudice.

### 3. Claims Against Woodbury and St. Paul

To state a claim under the DPPA, Garn must adequately allege that her data was "obtained" for an improper purpose. 18 U.S.C. § 2724(a). The Court previously determined that looking up a person's motor vehicle records meets the intended meaning of "obtained." Ray, 24 F. Supp. 2d at 848 (citing Kost, 2013 WL 6048921, at *11. ) Thus, the Court must determine whether the facts Garn alleges give rise to a plausible inference that her data was

obtained for an improper purpose.

Garn's allegations with respect to Woodbury do not rise above the speculative level[3] because she has not alleged any "indication of a connection or interaction between an identifiable law enforcement officer and [herself], from which the asserted impropriety of the officer's retrieval of the plaintiff's data can be plausibly inferred." Mitchell, 2014 WL 835129, at *8. Garn does not allege, for example, that she had any particular contact with any Woodbury law-enforcement officer. Her only explanation for Woodbury's access to her records is "because [she] is a woman, because [she] is well-known in the law-enforcement community, because of [her] physical attractiveness, or because [she] is interesting to law-enforcement officers or for other personal reasons." (Compl. ¶ 183.) These general allegations, however, are insufficient to plausibly plead a DPPA claim as to Woodbury. As Judge Schiltz explained:

> the basic fact pattern alleged in many of these cases—that (1) the plaintiff's record was accessed many times and (2) the plaintiff cannot think of any legitimate reason for the accesses—is generally not sufficient to state a plausible claim, given the numerous legitimate reasons that a government official might have for looking up a driver's-license record.

Taylor v. City of Amboy, No. 14-cv-722, 2014 WL 5438498, at *3 (D. Minn. Oct. 24, 2014) (Schiltz, J.). Moreover, "in the absence of clear evidence to the contrary, the courts presume that [public officers] have properly discharged their official duties." Potocnik (Brian), 2014

---

[3] Woodbury's access to Garn's records was so sporadic as to be almost non-actionable as a matter of law. "Low numbers of accesses scattered among multiple unrelated defendants . . . do not give rise to a plausible claim that any of the accesses was improper." Delaney, 2014 WL 5406884 at *4.

WL 683980, at *3 (quoting United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926)). Garn's failure to make any specific allegations regarding her connections to Woodbury law enforcement at the time of the allegedly improper look-ups means that she has not plausibly pled that Woodbury's activities were indeed improper. Her claims against Woodbury are therefore dismissed with prejudice.

Her allegations with regard to St. Paul, on the other hand, make this case "more akin to cases where the Court found the allegation plausible." Jessen v. Blue Earth Cnty., No. 14-cv-1065, 2014 WL 5106870, at *6 (D. Minn. Oct. 10, 2014) (Kyle, J.). Garn alleges that she kicked a St. Paul police officer out of her hockey league in Spring 2011, and that the allegedly improper look-ups occurred at approximately the same time. (Compl. ¶ 37.) Cf. Smythe v. Onamia, No. 12-cv-3149, 2013 WL 2443849, at *6-7 (D. Minn. June 5, 2013) (Montgomery, J.) (allegations that police chief, who was plaintiff's landlord, used plaintiff's data to harass and allow others to harass plaintiff by telephone, email, and in person, were sufficient to state a DPPA claim); Taylor, 2014 WL 5438498, at *4 (plaintiff was well-known police officer who was convicted of assault after a late-night altercation with another police officer at his home; court found that the plaintiff had "barely" stated a claim as to post-altercation accesses of his information by cities not connected to the assault events); Jessen, 2014 WL 5106870, at *6 (denying motion to dismiss in part because one plaintiff had been engaged to law enforcement officer in the county and the betrothal had ended badly, the plaintiffs had not been to the county for six years before the alleged improper look-ups and had no contact with the justice system in the county, and there were 105 look-ups of plaintiff's and her family's

information by someone in the county); Engebretson v. Aitkin Cnty., No. 14-cv-1435, 2014 WL 6608747 (D. Minn. Nov. 19, 2014) (Montgomery, J.) (denying in part motions to dismiss because the plaintiff was law enforcement officer who filed successful sexual harassment complaint against her police chief and the lawsuit received media attention); Karasov v. Caplan Law Firm, No. 14-cv-1503, 2015 WL 439509 (D. Minn. Feb. 3, 2015) (Nelson, J.) (allegations that the plaintiff was a Hennepin County judge who was the subject of a well-publicized disciplinary investigation and hearing in 2010 and 2011 regarding her residency in Hennepin County sufficient to state a claim as to access within statute of limitations and close in time to the disciplinary proceedings).

Although Garn has alleged some contact with St. Paul law enforcement that might tend to show a connection between St. Paul and the allegedly improper look-ups, her allegations are far from a model of specificity. Rather, she alleges generally that, sometime in Spring 2011, she kicked a St. Paul police officer out of her hockey league and asks the Court to infer an impermissible purpose to look-ups that occurred in March 2011. Although Garn's allegations hint at a connection between the March 2011 look-ups and Garn's contacts with the police officer, because the allegations do not specifically allege the relevant dates of Garn's contacts with the police officer or more information about those contacts, the allegations do not "nudge [her] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 571. Thus, even this claim must be dismissed. Id. But unlike her claims with regard to the other Defendants, Garn has at least established a conceivable basis on which the Court may be able to infer St. Paul's liability. Thus, the Court will dismiss her

claim against St. Paul without prejudice, to allow her to re-plead it and more specifically allege her connection with St. Paul law enforcement and with the three allegedly improper accesses to her information by St. Paul. Should Garn wish to pursue her claim against St. Paul, she must file an amended pleading within 30 days of the date of this Order.

**B.    Motions to Sever**

All Defendants except the Commissioner Defendants have moved to sever under Rule 20, arguing that Garn improperly joined them in a single action. Because the Court has determined that Garn has not stated viable claims against any Defendants save St. Paul, the severance motions are denied as moot.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Motion to Dismiss and/or to Sever by Minneapolis and John and Jane Does 1-100 (Docket No. 11) is **GRANTED in part and DENIED as moot in part** as set forth above;

2. St. Paul's Motion to Dismiss and/or to Sever (Docket No. 15) is **GRANTED in part and DENIED as moot in part** as set forth above;

3. Kandiyohi County's Motion to Dismiss and/or to Sever (Docket No. 19) is **GRANTED in part and DENIED as moot in part** as set forth above;

4. The Motion to Dismiss and/or to Sever by Brooklyn Park, Crystal, North St. Paul, and Woodbury (Docket No. 25) is **GRANTED in part and DENIED as moot in part** as set forth above;

5. Campion's and Dohman's Motion to Dismiss (Docket No. 33) is **GRANTED**; and

6. The Complaint is **DISMISSED with prejudice** as to all Defendants with the exception of St, Paul;

7. The Complaint is **DISMISSED without prejudice** as to St. Paul; and

8. Plaintiff has 30 days from the date of this Order to re-plead her claims against St. Paul, failing which the Complaint will be dismissed with prejudice in its entirety.

Dated:   March 24, 2015

    *s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge